Filed 03/13/25

VERMONT SUPERIOR COURT

Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03045

| Elizabeth McCurley v. Tyler LeBeau |
| --- |

## FINAL ORDER

This landlord-tenant case came before the court for a bench trial on February 19, 2025. Plaintiff Elizabeth McCurley (Landlord) was represented by attorney Justin Schoville and defendant Tyler LeBeau (Tenant) was pro se. For the reasons set forth below, the court enters judgment in favor of plaintiff on the issue of possession, orders that the funds currently held in escrow be disbursed to Landlord, and enters judgment against Tenant for $8,500.

## Background

Landlord, who lives in New Hampshire, owns a house with two dwelling units at 123 High Street in Hardwick. She bought the building in the 1980s from her aunt who had lived there for decades. In early 2024, Landlord decided to make the units available for rent. A mutual acquaintance introduced Landlord to Tenant, who was looking to rent a home in Hardwick to live with his girlfriend—now fiancée—and his young child for whom he shares custody. Tenant agreed to rent 123-A, a three-bedroom unit.

The parties signed a 12-month lease agreement under which Tenant agreed to rent the unit for $1,700 per month. Plaintiff moved in and paid February's rent along with a $1,000 security deposit.

The relationship between Landlord and Tenant soon deteriorated. Tenant paid March rent late and then withheld all but approximately $600 of April's rent, which was also paid late. He thereafter failed to pay rent until this case was filed and, in November 2024, the court ordered him to pay rent into court in the amount of $850 per month during the pendency of the case. Tenant has complied with the rent escrow order and paid $3,400 into court.

Tenant has raised significant habitability concerns. He has submitted evidence of plumbing issues, electrical issues, heating issues, water damage, a rat infestation, and a drop ceiling in the kitchen having fallen down. He reported his concerns to the State Fire Marshal, which inspected the property on April 2, April 19, October 9, October 16, and November 22. The evidence also shows that Landlord and Tenant communicated extensively about these concerns and that Landlord made numerous repairs to the property in response to Tenant's concerns and the Fire Marshal's reports.

Landlord served Tenant a termination notice for nonpayment of rent, which was received by Tenant on June 7, 2024. The notice indicated that the lease would be terminated unless Tenant paid his back rent by June 21. Tenant did not pay by June 21 and refused to vacate the property.

The parties' lease provides that, in the event of a dispute, the parties "agree to hold negotiations amongst themselves in 'good faith' before any litigation." Pl.'s Exh. 1 at ¶ 36. The record reflects numerous communications between Landlord and Tenant and then Landlord's counsel and Tenant regarding the rent and the habitability issues before this case was filed. Landlord's counsel, however, declined Tenant's request for a formal mediation session. The lease also prohibits Landlord from "making any type of retaliatory acts against the Tenant." *Id.*, ¶ 39.

This case was filed on August 5, 2024.

## Analysis

There is no dispute that Tenant failed to pay rent from May 2024 until ordered to pay rent into court by November 2024. Tenant argues, however, that he was justified in withholding rent entirely because of the habitability issues at the property.

Under Vermont law, a warranty of habitability is implied in all residential rental agreements. Under this warranty, a landlord is obligated to provide "premises that are safe, clean, and fit for human habitation and that comply with the requirements of applicable building, housing, and health regulations" and "ensure that the dwelling unit has heating facilities that are capable of safely providing a reasonable amount of heat" and "an adequate amount of water." 9 V.S.A. § 4457(a), (c). If a landlord fails to comply with this obligation, and "after receiving actual notice of the noncompliance," the landlord "fails to make repairs within a reasonable time and the noncompliance materially affects health and safety," the tenant may "withhold the payment of rent for the period of the noncompliance." 9 V.S.A. § 4458(a). With respect to minor defects, "the tenant may repair the defect and deduct from the rent the actual and reasonable cost of the work, not to exceed one-half of one month's rent." 9 V.S.A. § 4459.

The court concludes that Landlord lawfully terminated the tenancy because of Tenant's complete nonpayment of rent for the months of May and June. Although Tenant began raising habitability issues in March 2024, the evidence shows that Landlord responded to Tenant's concerns and worked with Tenant to make reasonable repairs during April, May, and June. This is reflected in the parties' extensive email and text communications and in the Fire Marshal's reports, which demonstrate that Landlord corrected the vast majority of complaints identified within a reasonable period of time.

Moreover, the court simply cannot find credible Tenant's testimony that he withheld May and June rent because of habitability issues. Tenant wrote to Landlord on May 15 that he intended to make a full payment for May but could not because "money is tight right now." *See* Pl.'s Exh. 7. Tenant then told Landlord he mailed her a partial check for May's rent and would get "another out soon." *Id.* When the first check didn't arrive as expected, Tenant reassured Landlord on May 18 that it was "on its way." *Id.* When the check still hadn't arrived by May 23,

Tenant responded, "It'll all get straightened out. Had surgery this morning. Give me the weekend and I'll square it up." *Id.* When the check still didn't arrive after that, Tenant claimed the check had been left in his Jeep, which had broken down and took several days to fix. He then claimed he put the check immediately in the mail after he got his Jeep back. Landlord never received the first check for a partial payment of May rent's, the promised second check paying the remainder of May's rent, or a check for June's rent. At trial, Tenant testified that the Post Office returned the partial rent check he purportedly mailed to Landlord in May (her address in New Hampshire hasn't changed), at which point Tenant decided to withhold rent entirely because of habitability issues, although he apparently never told Landlord this until after she sent the termination notice. Tenant provided no evidence to Landlord or the court to support his claims of having had surgery, having his vehicle repaired, or his rent check being returned to him by the Post Office. Moreover, defendant's comprehensive "Timeline of Events," which he introduced at trial, fails to show any new habitability issues arising between May 15 and when the termination notice was served on June 7.

Considering the totality of the evidence, the court concludes that Tenant chose not to pay rent in May and June for personal financial reasons not because there were habitability issues materially affecting the health and safety of his family that Landlord was failing to repair within a reasonable time. *See* 9 V.S.A. §§ 4457, 4458. This conclusion is further supported by Tenant's decision to remain living on the property for nearly a year after he now claims the apartment was effectively inhabitable.

Because Tenant was obligated to pay rent and failed to do so, his tenancy was lawfully terminated on June 21 pursuant to the notice of termination, Tenant has no right to remain at the property, and Landlord is entitled to resume possession. *See* 9 V.S.A. § 4467(a), 4468; 12 V.S.A. § 4854.

With respect to damages, the lease obligated Tenant to pay $1,700 per month. He made a partial payment for April and has not paid Landlord directly since. Landlord does not appear to contest the partial April payment. From May 2024 to March 2025 then, Tenant owes Landlord $18,700 under the terms of the lease. The evidence shows, however, that more serious habitability issues—including a rat infestation and lack of adequate heat—arose after Landlord terminated the lease in June 2024. Landlord addressed the rat infestation within approximately one week of being notified in November 2024 but was not able to remedy the lack of adequate heat during the ensuing winter months. Both were issues that can materially affect health and safety. Accordingly, the court concludes that Tenant was entitled to lawfully withhold rent from November through March 2024. Based on the foregoing, the court concludes that Landlord is entitled to damages in the amount of $11,900. The clerk shall disburse the $3,400 held in escrow to Landlord and the court will enter judgment against Tenant in the amount of $8,500.[1]

---

[1] Tenant has provided receipts and spreadsheets purportedly showing expenses he incurred to repair the property during his tenancy. *See* Defs.' Exh. Q. The court is unable to determine which items purchased were used to make repairs on the rental property. In any event, the amount of rent Landlord

The court is not persuaded by Tenant's arguments that Landlord breached the lease by retaliating against or failing to negotiate with him in good faith before bringing this lawsuit. As discussed above, the evidence shows that Landlord attempted to address the habitability concerns raised by Tenant in good faith, and gave Tenant numerous opportunities to pay rent, before deciding to terminate his tenancy and bring this lawsuit. Landlord was under no obligation to participate in the formal mediation process suggested by Tenant.

## Order

The clerk shall issue a writ of possession and disburse the $3,400 held in escrow to plaintiff Elizabeth McCurley. Judgment is entered against defendant Tyler LeBeau in the amount of $8,500.

Electronically signed on: 3/13/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

Electronically signed pursuant to V.R.E.F. 9(d)

_____
Merle L. Haskins
Assistant Judge

---

allowed Tenant to withhold for April 2024, and the amount the rent the court is allowing Tenant to retain from November 2024 to March 2025, in combination vastly exceed the amount that Tenant claims he spent on repairs to the property.